### Frank P. Fox, Appellant, v. Phillip F. Simons et al., Appellees.

AGENCY—*good faith required.* An agent will be held to the utmost good faith in dealing with the subject-matter of the agency. The relation of principal and agent is one of trust and confidence and the agent will not be permitted to betray such confidence to take advantage of the position to benefit himself to the disadvantage of his principal and where he deals with the subject-matter on his own account he will be compelled to transfer the benefit to the principal. Where the consent of the principal is given, however with full knowledge of the facts and there is no concealment or deception on the part of the agent and the principal has suffered no injury therefrom there is no violation of the agent's obligation to his principal.

Bill for accounting, etc. Appeal from the Circuit Court of Marion county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed August 5, 1910. Rehearing denied October 27, 1910.

CHARLES H. HOLT and KAGY & VANDERVORT, for appellant.

NOLEMAN & SMITH and W. F. BUNDY, for appellees; LEROY M. WADE, of counsel.

MR. JUSTICE SHIRLEY delivered the opinion of the court.

Appellant Fox filed his bill against the appellee, Phillip F. Simons, to compel the assignment of certain leases and for an accounting.

It was averred in substance that appellant had em-

ployed Simons as agent to solicit and procure water, oil and gas leases upon various tracts of land upon a stipulated salary, and that by virtue of his employment it was his duty to procure leases in the name of appellant, and that in violation of the trust reposed in him and while he was so employed he secured certain leases to the number of thirteen to himself; that so taking said leases was a fraud upon appellant, and that Simons in equity acquired no right to said leases, but held the same in trust for appellant.

The bill prayed that Simons be decreed to assign the leases to appellant and account for any money received by him by virtue of any of said leases having been made to him.

By an amendment to the bill Michael Wade, Charles B. McCamey, Nellie M. Simons, Charles E. Gibson, Carrol F. Veitch and John Miller as assignees of Simons to certain of said leases were made parties defendant.

All of the defendants answered, denying the material allegations of the bill, and further answering that appellant agreed Simons might take leases in his own name while taking leases for appellant, and that with knowledge of the taking of said leases by Simons he acquiesced in such action.

Upon a hearing, the court entered a decree finding appellant had no interest in said leases and dismissing the bill for want of equity.

Numerous errors are assigned, but the arguments of counsel are confined to the alleged errors of the court in refusing to grant the relief prayed in the bill, and in dismissing it for want of equity.

Appellant was engaged in what he called the business of an oil producer and had been operating in this state for several years. It was a part of the business to secure oil and gas leases in territory where it was supposed oil and gas might be found and produced. Among several persons employed by appellant for this

purpose was appellee Simons, whom appellant employed in November, 1907. At that time Simons was employed at a salary of $150 per month and his traveling expenses, to secure leases for appellant. He worked in this line of employment in Indiana and Missouri until about September 1, 1908, when he went to Marion county, Illinois, to secure leases for appellant, still at the same salary. It was while Simons was thus engaged that he secured the leases to himself and the controverted question of fact is whether appellant agreed that while securing leases for him, Simons might also secure leases for himself.

When Simons went to Marion county he was directed by appellant to take a block of leases on land south of the B. & O. R. R. at or near Sandoval. At the same time appellant sent another agent to take leases in the same field or vicinity north of the railroad. There was no direction to secure leases on any particular tracts, but appellant testifies he told his agents to secure about 3,000 acres. After 2,370 acres had been secured and reported to appellant the agents as they testify told him they would return and get more for him but he said that would be enough. At this time oil had not been developed in the field, except a sign of oil in a coal mine which had attracted appellant to secure leases there. Appellee Simons and one McCamey who also was an agent of appellant, and working with him, testify that appellant made this statement about the last of September or first of October.

Simons testifies that the second day they were in the field to get leases he said to appellant, "Frank, it looks good to me; I am going to take a little stuff for myself" and appellant replied "I don't care." Appellant testifies that not to his knowledge did he, in the month of September, give his consent that Simons might take some leases for himself, but does admit that about October 4th, when Simons asked him how it would be for him to go out and get a few leases for himself he said "all right."

The leases taken by Simons to himself were on small tracts and amounted in the aggregate to 452 acres.

The evidence shows, we think, that appellant knew Simons had taken the leases to himself some time before oil and gas were struck in the territory in the latter part of March afterwards, and Simons testifies appellant never made any demand upon him to assign the leases to appellant before he brought this suit and after oil and gas were found.

Without unduly extending this opinion by a discussion of the evidence and of circumstances which add more or less weight to the contention of the parties by way of corroboration we are of opinion that upon the whole evidence the chancellor who heard the witnesses was warranted in finding that appellant was satisfied with securing leases on 2,370 acres and then wanted no more, and that before Simons acquired any leases he gave him permission to secure leases for himself. If such permission were given there is nothing in the evidence to show there was any abuse of it by Simons. At that time no oil or gas had been developed; the field was only a bare prospect, and one piece of land in the field was as good a prospect as any other. No advantage was taken by Simons as to situation, and it also appears Simons' leases were in small and scattered tracts; that he paid for the leases himself and that there was no secrecy about his transactions.

An agent will be held to the utmost good faith in dealing with the subject-matter of the agency. The relation of principal and agent is one of trust and confidence, and the agent will not be permitted to betray such confidence and take advantage of the position to benefit himself to the disadvantage of his principal, and where he deals with the subject-matter on his own account he will be compelled to transfer the benefit to the principal. These principles are elementary; they rest upon simple rules of common honesty, and need no citation from law books to support them.

Where the consent of the principal is given however with full knowledge of the facts and there is no concealment or deception on the part of the agent, and the principal has suffered no injury therefrom, there is no violation of the agent's obligation to his principal.

We think the evidence fairly shows a full knowledge by appellant of all the facts material to be known concerning the field and its prospects, and there was no deception, or concealment of any material fact from appellant and the chancellor having found against appellant upon the question of his consent to Simons to secure his leases and believing such finding to be fairly supported by the evidence the decree will be affirmed.

*Affirmed.*